# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILILNOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL REDMOND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 11 C 8734** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **COOK COUNTY, a unit of municipal** | ) | |
| **government; and COOK COUNTY** | ) | |
| **SHERIFF'S DEPARTMENT, a political** | ) | |
| **subdivision,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Redmond ("Redmond"), an African American male, brought suit in this Court pursuant to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 against Defendants the Cook County Sheriff's Department (the "Sheriff's Office") and Cook County ("Cook County"). Redmond alleged that the Sheriff's Office and Cook County had discriminated against him due to his race and disability. For the reasons set forth below, the Court concludes that Redmond's claims are barred by the defense of *res judicata* and grants Defendants' motion for summary judgment.

### Relevant Background

Since 1994, Redmond had been employed as a Deputy Sheriff with the Cook County Sheriff's Office. (Defs.' LR 56.1(a)(3) Stmt. ¶ 3.) The Sheriff's Office has in place certain General Orders governing the behavior of its employees, which include certain prohibitions on the abuse of medical leave. (*Id.* ¶ 28.) In February 2009, Redmond claimed that he had suffered an on-the-job back injury that rendered him unable to work, although the parties dispute whether he also had a pre-existing back injury. (*Id.* ¶¶ 13, 15; Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 13, 15.)

What is not in dispute is that Redmond was reported as "injured on duty" between March 5, 2009, and May 20, 2009, and received disability benefits during that time. (Defs.' LR 56.1(a)(3) Stmt. ¶ 16.)

On May 26, 2009, a claims adjuster for the Cook County Department of Risk informed Redmond that an independent medical examination and MRI scan showed that his injury was pre-existing and not directly related to the February injury. (*Id.* ¶ 18.) Redmond was further informed that his temporary total disability payments would cease, effective May 21, 2009, and he was to proceed to the Cook County Medical Unit by May 22, 2009, to be processed for his return to work. (*Id.*) On June 3, 2009, the Sheriff's Office sent Redmond a letter stating that his Worker's Compensation claim was denied by Risk Management on May 21, 2009, and that he was currently in an unauthorized, no-pay status with the Sheriff's Office. (*Id.* ¶¶ 19-20.) The June 3 letter further instructed Redmond to report to the Cook County Medical Unit with a comprehensive diagnostic medical statement for the period he was not at work, and also informed him that if he was medically unable to return to work, he could contact the County Pension Board to determine his eligibility for Ordinary Disability or contact the Sheriff's Personnel Office to request Family and Medical Leave Act information. (*Id.* ¶ 24.) Finally, the letter cautioned Redmond that if he failed to report as directed, he would be subject to disciplinary action, which could include termination. (*Id.* ¶ 25.)

The Sheriff's Office sent four subsequent letters to Redmond sending additional medical documentation that it required in order to convert him to an authorized status. (*Id.* ¶¶ 26-27, 29, 34.) Finally, on September 24, 2009, the Cook County Department of Risk Management sent Redmond a letter informing him that, after a review of the circumstances surrounding his injury, it determined that his injury did not arise out of and was not in the course of his employment

with Cook County, and, therefore, denied him disability benefits. (*Id.* ¶ 31.) Additionally, on several occasions in May, June, and July 2009, Redmond was subject to four separate summary punishment action requests for having called in sick despite having no sick time available to him. (*Id.* ¶¶ 38-40.)

On September 30, 2009, the Sheriff's Office filed a complaint register against Redmond based solely upon the foregoing attendance issues, and the Sheriff's Office of Professional Review ("OPR") instituted an investigation. (*Id.* ¶ 41.) Shortly thereafter, on October 6, 2009, Redmond filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 54.) Redmond did not tell anyone at the Sheriff's Office that he had filed the charge. (*Id.*)

On September 9, 2010, after the OPR investigation concluded, a complaint was filed against Redmond with the Cook County Sheriff's Merit Board (the "Merit Board"), alleging that his attendance issues constituted abandonment of his position with the Sheriff's Office. (*Id.* ¶ 45.) The Merit Board is an administrative agency possessing the responsibility and authority to conduct hearings on disciplinary matters involving Police Officers, Correctional Officers, and Deputy Sheriffs after their one-year probationary period ends. (*Id.* ¶ 47.) On February 24, 2011, after providing Redmond with notice of the charges against him, the Merit Board held a hearing. (*Id.* ¶ 48.). Redmond was represented by an attorney at the hearing, and both sides had the opportunity to present witnesses. (*Id.*)

On April 18, 2011, the Merit Board issued a decision, which stated in relevant part that, "[b]ased on the evidence presented, and after assessing the credibility of the witnesses . . . the Sheriff has proven by a preponderance of the evidence that the Respondent did violate each and every General Order and rule and regulation as set for the in the complaint filed herein," and

ordered that Redmond be terminated effective September 10, 2010.  (*Id.* ¶ 49.)  On May 12, 2011, Redmond filed a complaint for Administrative Review with the Circuit Court of Cook County, Chancery Division, appealing the decision of the Merit Board.  (*Id.* ¶ 58.)  Redmond's complaint included no claims of discrimination or retaliation.  (*Id.* ¶ 59.)  On December 8, 2011, Redmond also filed the instant federal action.  Subsequently, on March 26, 2012, after the matter was fully briefed and argued before it, the Cook County Court upheld the Merit Board's decision.  (*Id.* ¶ 60.)

**Discussion**

The well-established principle that a state court judgment is entitled to "full faith and credit in federal court" also extends to "[t]he judgment of a state court sitting in review of an administrative agency . . . ."  *Abner v. Ill. Dep't of Transp.*, 674 F.3d 716, 719 (7th Cir. 2012) (citing 28 U.S.C. § 1738 and *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982)). State court judgments, such as the one at issue here, may be accorded preclusive effect in federal cases "subject to the law of the state where the judgment was rendered."  *Id.*  Therefore, if under Illinois law a state court judgment "would be deemed preclusive, and if the party against whom preclusion is sought enjoyed a full and fair opportunity to raise his federal claim in the state proceeding, then a federal court must grant the state judgment preclusive effect."  *Id.*; *see Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 635 (7th Cir. 2004) (citing *Kremer*, 456 U.S. at 481-82) (court must first determine whether *res judicata* applies, then examine whether the plaintiff had an opportunity to "fully and fairly litigate his civil-rights claims" in the state court proceeding).

Illinois law provides that *res judicata* will bar federal claims where (1) there has been a state court final judgment on the merits; (2) the state court judgment involved the same parties or

privies as the current action; and (3) the state court action "constitute[d] the same cause of action as the current claims." *Garcia*, 360 F.3d at 635 (citing *Pirela v. Vill. of N. Aurora*, 935 F.2d 909, 911 (7th Cir. 1991) and *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998)). Here, Redmond disputes only the third element of this analysis.

In Illinois, to determine whether a state court appeal of an administrative decision (*i.e.*, a decision to terminate a police officer rendered by the Police Merit Board) constitutes the same cause of action as federal wrongful termination and retaliation claims, Illinois courts use what is commonly referred to as the "transactional approach." *Garcia*, 360 F.3d at 637. This method requires a court to "focus not on the type of proof required in each suit but the factual setting in which each suit arises." *Hagee v. City of Evanston*, 729 F.2d 510, 513 (7th Cir. 1984); *see Garcia*, 360 F.3d at 637 (transactional approach "focus[es] only on the bounds of the transaction at issue, disregarding the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories."). "Thus, if both actions arise out of the same group of operative facts, the doctrine of *res judicata* bars the second suit." *Pirela*, 935 F.2d at 912.

Here, as the Court concludes that both suits "arise from the same core of operative facts," *i.e.*, the Merit Board's ultimate decision to terminate Redmond. *Garcia*, 360 F.3d at 637; *see also Abner*, 674 F.3d at 721-22 (*res judicata* applied where both proceedings focused on plaintiff's discharge); *Pirela*, 935 F.2d at 913 (federal discrimination claims barred by state court suit where arose out of plaintiff's "misconduct" and the police department's "procedures relating to suspension and termination"). The fact that the OPR investigation, Merit Board hearing, and resultant appeal took place coterminous with Redmond's EEOC charges that give rise to the instant suit does not change the Court's conclusion. *See Lolling v. Patterson*, 966 F.2d 230, 233

(7th Cir. 1992) (*res judicata* barred federal suit filed while Merit Board proceedings remained pending).

The case of *Welch v. Johnson*, 907 F.2d 714, 722 (7th Cir. 1990), is particularly instructive. There, plaintiff sued her employer, the Illinois Department of Children and Family Services ("DCFS"), in federal court alleging gender discrimination and retaliation. A few months after filing suit, plaintiff was terminated from her position. Plaintiff appealed her dismissal to the Illinois Civil Service Commission, which ruled in favor of DCFS. Plaintiff then filed suit in Illinois state court seeking administrative review of that decision, but was unsuccessful. The defendants argued that the plaintiff's claims should be dismissed as *res judicata* because she should have raised them as defenses in the state court proceedings. The court agreed with the defendants.

The court noted that Illinois law "clearly contemplated that if a defense is grounded in matters 'within the purview of the original action,' such a defense may be barred by *res judicata* if not raised in the original action." *Id.* at 721 (quoting *Hughley v. The Indus. Comm'n*, 394 N.E.2d 1164, 1166 (Ill. 1979)). The court identified the facts relevant to the discharge action as allegations that plaintiff had violated certain work rules and policies, including "operating a private adoption agency while she was employed at DCFS and by using her position at DCFS to benefit her personal business interest in the private agency." *Id.* Next, the court described the facts relevant to the federal action as plaintiff's claims that DCFS "had rendered unduly critical evaluations of her job performance and use of sick leave, had made inappropriate demands to review her statements of economic interest, had charged her with a conflict of interest, had disseminated false information about her to the media, and had threatened her with imminent dismissal." *Id.* Applying the "transactional approach" to these factual scenarios, the court

6

concluded that "the facts described above [were] merely different factual sides of the same coin," because plaintiff argued that they "occurred for one reason (a discriminatory motive)" while the defendants argued that they "occurred for a different reason (just cause to dismiss [plaintiff])." *Id.* at 722. However, "[t]he single factual situation out of which both suits arise is DCFS's conduct toward [plaintiff] that eventually culminated in her discharge. This conduct and the reasons underlying that conduct are relevant as either part of a claim or a *defense* in both the state and federal claims . . . ." *Id.* Thus, *res judicata* applied.

Numerous other Seventh Circuit cases are in accord. In *Abner*, the Seventh Circuit upheld the dismissal of an Illinois Department of Transportation employee who alleged that he had been retaliated against for filing a race discrimination case against his employer. 674 F.3d at 719. There, the court's conclusion that the state court judgment for defendant precluded the federal action was rooted in the fact that the "issue in the state administrative proceeding was whether [defendant] had just cause to discharge [plaintiff]," and that the plaintiff's "contention that [defendant] fired him in retaliation for his prior charge of race discrimination [was], in essence an assertion that the [defendant's] stated reason for his termination . . . is a pretext for discrimination . . . .[which] could have been raised as a defense in the administrative proceeding." Similarly, in *Pirela*, the court held that preclusion was appropriate because "[a]t their most basic, both suits would require Pirela to prove that the Village acted in a discriminatory manner when it suspended and discharged him." 935 F.2d at 912.

Likewise, here, the core of Redmond's state court administrative review action alleged that he was wrongfully terminated for cause due to his attendance issues. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 58-60.) At bottom, either he was properly discharged, or he was improperly discharged due to some form of discrimination and his attendance issues were mere pretext. As the *Abner*

7

court noted, "[o]nly one of these [scenarios] can be true." The transactional test when applied to these facts thus can yield only one conclusion: the two cases involve the same core of operative facts, and *res judicata* applies.

Perhaps recognizing that Seventh Circuit case law weighs heavily against him, Redmond only advances a few counter-arguments that are all variations on the same theme: that he was unable to bring his federal claims before the state court. This is simply false.

As the Seventh Circuit recently reaffirmed, "Illinois litigants seeking circuit-court review of administrative proceedings implicating events that also give rise to a federal civil-rights claim must join that claim with the judicial-review action in the circuit court." *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014) (citing *Dookeran v. Cnty. of Cook, Ill.*, 719 F.3d 570, 577 (7th Cir. 2013), *Abner*, 674 F.3d at 722, and *Garcia*, 360 F.3d at 643-44). As explained in *Pirela*, 935 F.2d at 913, the Supreme Court in *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990), unequivocally held that "the states and federal government share concurrent jurisdiction over Title VII claims," rendering both the state court and the state review boards such as the Merit Board capable of hearing discrimination claims, at least in the form of defenses.

Similarly, there is no merit to Redmond's contention that the federal claims subject to the EEOC administrative process cannot be considered by the state court or Merit Board until the EEOC process has concluded. Essentially, Redmond argues that he was hamstrung by the requirement that he obtain a right-to-sue letter from the EEOC prior to asserting his discrimination claims. But, as explained in *Walczak*, there are multiple options available to plaintiffs who have not yet received their right-to-sue letter while a state court action is pending. Plaintiffs either may request "that the court postpone or stay the proceedings until such time as

[their] EEOC charge was resolved," or may request that the EEOC "accelerate the administrative process." 739 F.3d at 1019 n.3 (citing *Palka v. City of Chi.*, 662 F.3d 428, 438 (7th Cir. 2011)). Like Ms. Walczak, however, Redmond "did neither." *Id.*

Finally, Redmond asserts that the Circuit Court of Cook County's administrative review function is solely to determine whether the agency arrived at a rational decision after a fair hearing, and that such a narrow determination necessarily did not encompass his federal claims. This argument also is contrary to settled law. *See Garcia*, 360 F.3d at 637-38. In *Garcia*, the plaintiff, like Redmond, argued that "his administrative appeal of the Board's decision looked only at whether the denial was against the manifest weight of the evidence, and arbitrary and capricious—a very narrow review of the decision's propriety." *Id.* However, the court explained, "regardless of what a court reviews the [Police Merit] Board's decision for, both the administrative appeal and the instant lawsuit question the basis—either proper or improper—of the Board's denial of Garcia's disability benefits." *Id.* at 638. Thus, "[t]he 'core of operative facts' is identical for both causes of action: the acts of the Board and the Village Police Department leading up to and including the Board's decision to deny the benefits," and any "[a]ttempts to construe the causes of action in any other manner are futile." *Id.* Redmond's final argument therefore fails.

Despite the considerable weight of the foregoing precedent, Redmond still can prevail if he can establish that he was not afforded a "full and fair opportunity to litigate his claims" in the state court action. *Pirela*, 935 F.2d at 913 (internal quotations omitted). But after a review of the record before it, the Court concludes that he did.

First, as we have already seen, it is settled law that the Merit Board and the Cook County Circuit Court have jurisdiction to hear Title VII claims. *Pirela*, 935 F.2d at 913 (citing *Yellow*

*Freight*, 494 U.S. at 821). As the *Pirela* court noted, the plaintiff's claims of discrimination "would have been 'relevant and admissible in proceedings . . . [for] determining whether there was 'cause' for a discharge.'" *Id.* at 915 (quoting *Welch*, 907 F.2d at 724). Moreover, "Illinois courts have 'a duty, under the Administrative Review Act, to ensure that due process and an impartial adjudication were afforded in the administrative hearing.'" *Id.* (quoting *Lee v. City of Peoria*, 685 F.2d 196, 201 (7th Cir. 1982)). Therefore, "the state court could have heard [plaintiff's] claim or remanded his case to the Board for further proceedings." *Id.*; *see also Garcia*, 360 F.3d at 639 (full and fair opportunity to litigate federal claims "so long as [plaintiff] could have joined his federal claims with the administrative appeal of the Board's decision."). The same is undoubtedly true here.

Second, it is undisputed that the Merit Board held a full hearing, of which Redmond was provided notice, where he was represented by counsel, and where both parties presented and had the opportunity to cross-examine witnesses. (Defs.' LR 56.1(a)(3) Stmt. ¶ 48.); *see Abner*, 674 F.3d at 722 (full and fair hearing where plaintiff represented by counsel at administrative hearing). The Court therefore discerns no basis to conclude that Redmond did not receive a full and fair hearing in the state court proceedings.

### Conclusion

For the foregoing reasons, the Court concludes that the defense of *res judicata* bars Plaintiff Michael Redmond's claims, and grants Defendants' motion for summary judgment [dkt. 48]. Judgment is granted to Defendants Cook County and the Cook County Sheriff's Department. Civil case terminated.

Dated: February 11, 2014          /s/ John Z. Lee
                                  U.S. District Court Judge